UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-60471-CIV-GAYLES

DENNIS GODELIA and
STERLING YOUMAS,

    Plaintiffs,

v.

ZOLL SERVICES, LLC,

    Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendant's Motion to Exclude Opinions of Plaintiffs' Expert Witness, Richard J. Daken, Jr., P.E. [ECF No. 63]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

## BACKGROUND

Defendant Zoll Services, Inc. ("Zoll") designs, manufactures, and markets the LifeVest, a wearable defibrillator for patients at risk for sudden cardiac arrest. The LifeVest is made to detect life-threatening heart rhythms and automatically deliver a shock to restore the rhythm. The LifeVest is a Class III medical device, initially approved for sale in 2001 by the Food and Drug Administration ("FDA").

In November 2013, after recovering from a cardiac operation, Debra Godelia began using the LifeVest. On November 18, 2013, Mrs. Godelia experienced a defibrillation event[1] and lost consciousness. Although the parties dispute why, Mrs. Godelia's LifeVest did not administer a

---

1 A defibrillation event is either ventricular tachycardia ("VT") (150 beats per minute) or ventricular fibrillation ("VF") (200 beats per minute).

shock. Mrs. Godelia remained unconscious until she died in the hospital on November 20, 2013. Plaintiffs then filed this action against Defendant asserting claims for strict products liability, negligence, fraudulent misrepresentation, fraudulent marketing and promotion, breach of express warranty, negligent misrepresentation, and negligent infliction of emotional distress arising out of Mrs. Godelia's use of the LifeVest.[2]

Defendant has now moved to exclude the opinions of Plaintiffs' expert witness, Richard J. Daken, Jr. In his Report, Mr. Daken opines that "the cable connecting the rear therapy electrode set to the distribution network (DN) was separated from the circuit board within the DN. This separation was the result of defective soldering." Daken Rpt. 2, ¶ 2. In addition, Mr. Daken opines that "Zoll failed to implement regulatory-required processes to ensure that its manufacturing of the subject LifeVest, and in particular, the soldering at issue, was non-defective," and "[t]he defect . . . was a direct result of Zoll's failure to implement such manufacturing processes." *Id.* at ¶ 3.[3] Defendant contends that Mr. Daken's Report and testimony must be excluded because (1) he is not qualified to render such opinions; (2) his opinions are not reliable; and (3) his opinions will not assist the trier of fact. The Court disagrees and finds that Defendant's primary arguments go to the credibility of Mr. Daken's opinions and the weight the jury should afford them rather than their admissibility.

---

2 After the Court dismissed Plaintiffs' Second Amended Complaint, the Eleventh Circuit reversed, in part, finding that, as pled, Plaintiffs' claims were not preempted under the Medical Device Amendments of 1976 ("MDA"). The Eleventh Circuit affirmed this Court's finding that Plaintiff failed to state a claim for negligent infliction of emotional distress. Following remand and discovery, both sides moved for summary judgment, which the Court denied.

3 In the Report, Mr. Daken also opined that "the LifeVest detected a treatable life-threatening heart rhythm but failed to deliver therapy shock treatment to restore normal heart rhythm to Ms. Godelia." Daken Rpt. 2, ¶ 1. Plaintiff, however, no longer seeks to offer Mr. Daken on this point as there are multiple admissible sources to otherwise support this theory and because Zoll's previous theory, that CPR somehow caused the LifeVest to malfunction has been refuted. Accordingly, the Court will not address this portion of the Report.

## ANALYSIS

Federal Rule of Evidence 702, amended in 2000 in response to the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), states that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). "As the Supreme Court made abundantly clear in *Daubert*, Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. 589 n.7).

To perform it's gatekeeping duty, the Court must conduct a "rigorous three-part inquiry" under Rule 702, considering whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260. The proponent of the expert bears the burden of showing, by a preponderance of the evidence, that each of these requirements is met. *Id.*

While the Court's gatekeeping function ensures that unreliable testimony does not reach the jury, the Court must not make determinations on the credibility or persuasiveness of the proffered opinions; "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

3

admissible evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

I. Mr. Daken is Qualified

"[A] witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013). This is not a stringent standard. If the expert is "minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *1 (S.D. Fla. July 6, 2015) (citing *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012)).

Mr. Daken is a licensed professional engineer. He has taught college courses in biomedical engineering technology and electrical engineering. Indeed, one of his courses included instruction on soldering and de-soldering. As a result, the Court finds that Mr. Daken is qualified to testify as to proper soldering and de-soldering techniques, proper solder connections, and whether, in his expert opinion, the cable connecting the rear therapy electrode set to the DN was separated from the circuit board within the DN as the result of defective soldering.

In addition, the Court finds that Mr. Daken is qualified to testify as to whether Defendant failed to implement regulatory-required processes in its manufacturing of the Life-Vest and that this failure resulted in defective soldering in Mrs. Godelia's Life-Vest. Over the course of his career, as an engineering professor and while working in the clinical engineering divisions of several hospitals, Mr. Daken obtained experience both in the assessment of solder connections and in practices that comport with Current Good Manufacturing Practices ("CGMP"). Accordingly,

the Court that finds he is qualified to testify as to the limited second and third opinions set forth in his Report.

II.     Mr. Daken's Opinions are Reliable

The Court also finds Mr. Daken's opinions to be reliable. To assess reliability, the Court may consider several non-exhaustive factors including: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Frazier,* 387 F.3d at 1262 (internal citations omitted). This list "neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The trial court has "the same kind of latitude in deciding how to test an expert's reliability ... as it enjoys when it decides whether or not that expert's relevant testimony is reliable." *Id.* at 152.

The Court finds that all of Defendant's attacks on the "reliability" of Mr. Daken's opinions relate to his credibility or to the weight that should be afforded his findings and not the admissibility of his testimony. With respect to Mr. Daken's opinion on the soldering defect, Mr. Daken conducted a 10X magnified visual inspection of the separated cable's residual solder. Based on this visual inspection and his experience in soldering, Mr. Daken opined that the color ("dull gray, almost black") and the appearance of flux on the solder joint evidenced a defective solder connection. Mr. Daken also considered the lack of documented support for any theory that the LifeVest experienced abuse or excessive strain that would have caused the break. The Court finds Mr. Daken's magnified visual inspection to be reliable. To the extent that Defendant argues that Mr. Daken should have employed a more sophisticated inspection, those questions go to the weight of Mr. Daken's opinion and not whether his methodology was reliable. *See Jones v. Otis*

*Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988) ("[T]he weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility.").

In addition, the Court finds that Mr. Daken's opinion regarding Defendant's failure to implement CGMPs is reliable. In making this opinion, Mr. Daken reviewed the FDA's warning letter, Defendant's internal reports, and a 2015 Audit Report by Mr. Norman Wong ("Mr. Wong").[4] Dr. Daken's opinion, based on (1) his experience in assessing solder connections; (2) experience in and knowledge of preventive practices; and (3) his review of reports about Defendant's manufacturing practices, logically connects the visibly defective solder connection to Defendant's possible failure to implement regulatory-required processes when manufacturing the LifeVest. Accordingly, Defendant's arguments as to the reliability of Mr. Daken's third opinion are without merit. *See Id.* at 662 ("Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically.").

III. Mr. Daken's Opinions will Assist the Jury

For the third element, the Court must determine whether the proffered testimony "concerns matters that are beyond the understanding of the average lay person." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *2 (S.D. Fla. July 6, 2015) (quoting *Edwards v. Shanley*, 580 F. App'x. 816, 823 (11th Cir. 2014)). As solder defects and proper manufacturing practices are beyond the understanding of the average lay person, the Court finds that Mr. Daken's opinions will clearly assist the jury.

---

4 In 2015, Defendant retained Mr. Wong, a medical device auditor formerly with the FDA, to perform an audit of its activities. Mr. Wong's report expressed, among other things, a significant level of concern regarding soldering issues. Defendant has also moved to exclude any reference to Mr. Wong's report as a subsequent remedial measure.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Exclude Opinions of Plaintiffs' Expert Witness, Richard J. Daken, Jr., P.E. [ECF No. 63] is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of August, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE